UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

RUBINSTEIN & ASSOCIATES, PLLC,

                        Plaintiff,                  **REPORT AND RECOMMENDATION**

      v.                                                    20-cv-04173 (RPK) (ST)

ENTREPRENEUR MEDIA, INC.,

                        Defendant.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

      Rubinstein & Associates, PLLC ("Plaintiff") commenced this action against Entrepreneur Media, Inc. ("Defendant") on September 7, 2020, alleging claims under the Declaratory Judgment Act, the Lanham Act, New York state law, and common law. Defendant filed a Motion to Dismiss Plaintiff's Complaint. Defendant's Motion was referred to the undersigned for a Report and Recommendation. For the reasons set forth below, this Court respectfully recommends that Defendant's Motion be GRANTED.

    I.    BACKGROUND

        a.   **Factual Background**

      Unless otherwise indicated, all statements in this section are based on allegations in the Complaint. The relevant facts are as follows. Plaintiff is a law firm and New York professional limited liability company with an address at 961 Broadway, Suite 115, Woodmere, New York 11598. Compl. ¶ 4, Dkt. No. 1. Defendant is a California corporation with an address of 18061 Fitch, Irvine, California 92614. *Id.* ¶ 5.

      On February 29, 2020, Plaintiff submitted to the United States Patent and Trademark Office (the "USPTO") Application No. 88816134 (the "Application"). *Id.* ¶ 13. The Application

was for the mark ENTREPRENAWYER ("ENTRPRENAWYER" or the "Mark"), for "MARKETING CONSULTING; MARKETING SERVICES; ADVERTISING AND MARKETING" in class 35. *Id.* Plaintiff used the Mark in providing its legal services. *Id.* ¶ 14. It has since stopped using the Mark. *Id.* ¶ 15.

On July 14, 2020, after the Application was published for opposition, Defendant requested from the Trademark Trial and Appeal Board ("TTAB") of the USPTO a 90-day extension of time to oppose the Application. *Id.* ¶ 16. The TTAB granted Defendant's request. Justman Decl. Supp. Mot. Dismiss ("Decl."), Ex. 7, Dkt. No. 17-9.

On July 15, 2020, Defendant's counsel sent an email to Plaintiff. Compl. ¶ 17. The email provides an overview of Defendant's business history and its registered trademarks, claims generally that Defendant is "committed to protecting its intellectual property rights," then states:

> We recently learned that you filed an intent-to-use trademark application for the "ENTRPRENAWYER" trademark (App. No. 88/816134) in connection with: "*Marketing consulting; Marketing services; Advertising and marketing*" in Class 35.
>
> We further learned that you are using the ENTREPRENAWYER mark on social media, such as LinkedIn . . . .
>
> Given that your trademark contains a mark very similar to [Defendant's] registered trademark, and the application covers nearly identical goods and/or services, we are concerned that consumers may mistakenly believe that your goods and/or services are related to or affiliated with [Defendant] . . . .

Decl., Ex. 4, Dkt. No. 17-6. The email concludes by "ask[ing] that [Plaintiff] contact us to discuss this matter." *Id.* In subsequent emails from July and August 2020, Defendant alleged that the Mark was "similar" to Defendant's mark, indicated that it believed a likelihood of confusion exists, and sought a modification of the Mark. *See* Compl. ¶¶ 18-20.

On August 18, 2020, Plaintiff initiated a cancellation proceeding before the TTAB for Defendant's mark, ENTREPRENEUR. *Id.* ¶ 21. Defendant filed an opposition to Plaintiff's Application before the TTAB on September 2, 2020. *Id.* ¶ 22.

### b. Procedural Posture

Plaintiff commenced this action against Defendant on September 7, 2020, bringing causes of action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, the Lanham Act, 15 U.S.C. § 1051, *et seq.*, New York state law, and common law. *See generally id.* Specifically, Plaintiff seeks: a declaration of non-infringement of Defendant's marks; a declaration of invalidity and cancellation of defendant's marks as generic; a declaration of no dilution of the asserted marks; a declaration of no federal or state unfair competition; and a declaration of no common law trademark infringement. *Id.* On December 21, 2020, Defendant filed its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See generally* Notice Mot. Dismiss, Dkt. No. 17; Mem. Supp. Mot. Dismiss ("Mot."), Dkt. No. 17-1. Defendant's Motion to Dismiss also requests that portions of the Complaint that cite the parties' settlement negotiations be stricken. *See* Mot. at 22-23. The Motion has been fully briefed. *See generally* Mem. Opp. Mot. ("Opp."), Dkt. No. 18; Reply Supp. Mot. ("Reply"), Dkt. No. 19. The cancellation and opposition proceedings before the TTAB have been suspended pending disposition of this case. *See* Decl., Ex. 1, Dkt. No. 17-3.

## II. LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (citing *Malik v.*

3

*Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)). "Courts must accept as true all material factual allegations in the complaint and refrain from drawing from the pleadings inferences favorable to the party asserting jurisdiction." *Clarke v. U.S.*, 107 F. Supp. 3d 238, 243 (E.D.N.Y. 2015) (internal quotation marks and brackets omitted) (citing *Fox v. Commonwealth Worldwide Chauffeured Transp. of N.Y., LLC*, No. 08-CV-1686, 2009 WL 1813230, at *1 (E.D.N.Y. June 25, 2009)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

### III.  DISCUSSION

Defendant moves to dismiss for lack of subject matter jurisdiction, and in the alternative argues that the Court should decline to exercise jurisdiction and that Plaintiff has failed to state a claim for cancellation. *See* Mot. The Court need only consider the first argument. Defendant's 12(b)(1) Motion contends that Plaintiff has not established, and cannot establish, the existence of an actual controversy because Defendant opposes only Plaintiff's registration of the Mark. *See id.* at 7-12. Plaintiff disagrees and asserts, in substance, that Defendant objects to Plaintiff's use of the Mark, creating a threat of future litigation and thus an actual controversy. *See* Opp. at 7-11. In support of its argument that there is a threat of litigation, Plaintiff cites communications between the parties, Defendant's suit against non-parties Kelly Roach and her business Kelly Roach LLC (together, "Roach"), and Defendant's failure to covenant not to sue. *Id.*

#### a.  The Declaratory Judgment Act

The Declaratory Judgment Act provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration," where there exists a "case of actual controversy." 28 U.S.C. § 2201(a). There is a case of actual

4

controversy if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks and citation omitted). Under this standard, the threat of future litigation is relevant to the identification of an actual controversy. *See Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2d Cir. 2011) (citing *MedImmune*, 549 U.S. at 128).

The "existence of a dispute before the TTAB over the registration of a party's mark, on its own, 'is insufficient to establish sufficient adversity for the purposes of a declaratory judgment action.'" *1-800-Flowers.com, Inc. v. Edible Arrangements, LLC*, 905 F. Supp. 2d 451, 454 (E.D.N.Y. 2012) (citing *Bruce Winston Gem Corp. v. Harry Winston, Inc.*, 09 Civ. 7352 (JGK), 2010 WL 3629592, at *5 (S.D.N.Y. Sept. 16, 2010)); *see* Opp. at 8. However, an actual controversy may exist if one party opposes a second party's use of the latter's own mark. *See I.O.B. Realty, Inc. v. Patsy's Brand, Inc.*, 19 Civ. 2776 (AT), 2020 WL 2086096, at *5 (S.D.N.Y. Apr. 30, 2020) ("Where . . . a plaintiff seeks a declaratory judgment of non-infringement of the defendant's trademarks, no actual case or controversy exists unless the plaintiff can show that the defendant sought or threatened to seek to prohibit plaintiff's use of its mark.").

b. **Application**

As indicated above, Plaintiff argues that Defendant objects to Plaintiff's use of ENTREPRENAWYER. Specifically, Plaintiff takes issue with Defendant's allegations about the similarity of the parties' marks and the likelihood of confusion, in the July 15, 2020 email. *See* Opp. at 8-9. Plaintiff proceeds to aver, "Defendant's July 15, 2020 email plainly objected to [Plaintiff's] **use**" of ENTREPRENAWYER on LinkedIn. *Id.* at 9-10 (emphasis in Opp.). Plaintiff construes Defendant's alleged objection to Plaintiff's use as a "threat." *Id.* at 10. In

5

furtherance of its argument, Plaintiff cites cases in which courts identified cease-and-desist letters, as well as other documents that heralded legal action, as threats of litigation. *Id.* (citing *Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*, 151 F. Supp. 3d 451, 457 (S.D.N.Y. 2015); *Gelmart Indus., Inc. v. Eveready Battery Co.*, 120 F. Supp. 3d 327, 332 (S.D.N.Y. 2014); *Lee v. Makhnevich*, 11-cv-8665 (PAC), 2013 WL 1234829, at *4 (S.D.N.Y. Mar. 27, 2013)).

In context, it is apparent that the July 15, 2020 email does not ask Plaintiff to abandon its use of the Mark. The only reference the email makes to "use" is, "[w]e further learned that you are using the ENTREPRENAWYER mark on social media . . . ." Decl., Ex. 4. Plaintiff's decision to stop using the Mark on social media does not transform Defendant's statement into an objection to Plaintiff's use. *See* Compl. ¶ 15; Decl., Ex. 5, Dkt. No. 17-7. Further, Defendant's counsel sent the email the day after Defendant sought an extension of the deadline to oppose the Application before the TTAB. *See* Compl. ¶¶ 16-17. The email notes the classes in which Plaintiff seeks to register the Mark. Decl., Ex. 4. It proceeds to discuss the similarity of ENTREPRENAWYER to Defendant's mark in reference to the Application, which the email suggests "covers nearly identical goods and/or services." Decl., Ex. 4. Accordingly, the Court finds that the email pertains to Plaintiff's attempt to register the Mark.[1]

Under similar circumstances, courts have found an absence of actual controversy. For example, the defendant in *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.* sent the plaintiff a cease-and-desist letter demanding that the plaintiff "abandon its pending trademark application," characterizing the parties' marks as "confusingly similar," and detailing the

---

[1] The Court notes that the email, though it relates to the Application, does not actually ask Plaintiff to withdraw the Application. *See* Decl. Ex. 4. Only after subsequent correspondence, which the parties identify as settlement discussions, *see* Mot. at 6; Opp. at 17, and Plaintiff's filing with the TTAB a petition to cancel one of Defendant's marks did Defendant oppose the Application. Compl. ¶¶ 21-22. Accordingly, the Court is reluctant to characterize the email as a "cease-and-desist" letter like the correspondence at issue in several of the cases discussed below.

defendant's "vigorous protection" of its mark. *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391, 393-94 (S.D.N.Y. 2011). When the plaintiff did not respond to the letter, the defendant "formally filed a notice of opposition to plaintiff's registration application with the TTAB." *Id.* at 395. Highlighting that the defendant's letter, like the July 15, 2020 email, "did not claim trademark infringement" or "contest plaintiff's continued use of the mark," the Southern District of New York found that the parties' dispute concerned the plaintiff's registration of its mark. *Id.* As Plaintiff indicates, the facts in *Vina Casa* may vary from those of the instant matter, insofar as the *Vina Casa* parties' marks co-existed before the plaintiff sought to register its mark. *See* Opp. at 11; *Vina Casa Tamaya*, 784 F. Supp. 2d at 395. It is unclear for how long Plaintiff had actually used the Mark before Defendant's counsel sent the July 15, 2020 email, *see* Compl. ¶ 14, though the Application was filed on an intent-to-use basis. *See* Decl., Ex. 2, Dkt. No. 17-4. Nonetheless, it is particularly significant that the *Vina Casa* Court emphasized that the letter neither claimed infringement nor objected to the plaintiff's use of its mark, when it found that the plaintiff "failed to show an 'actual controversy'" sufficient to establish jurisdiction. *Vina Casa Tamaya*, 784 F. Supp. 2d at 395.

Likewise, the Southern and Eastern Districts of New York have elsewhere found that an assertion of the likelihood of confusion, when raised in objection to registration, does not create a case of actual controversy. *See, e.g.*, *I.O.B. Realty*, 2020 WL 2086096, at *3 (argument in opposition to registration that mark "is likely to cause 'confusion, mistake or deception' . . . merely set[s] forth the relevant likelihood of confusion standard for registration proceedings before the TTAB, [and] courts have found that such statements, 'without more,' do not 'constitute an indirect threat of an infringement suit.'") (citation omitted); *1-800-Flowers.com*, 905 F. Supp. 2d at 455-58 (finding no case of actual controversy, despite defendant's allegation

7

in six TTAB oppositions that consumers "will mistakenly assume that Applicant's Goods and Services are associated, endorsed by, affiliated with, or in some other way related to or sponsored by Opposer," and despite allegation that defendant's counsel told plaintiff's counsel that defendant objected to plaintiff's use of mark).

 Further, the cases to which Plaintiff cites in support of its argument, that the July 15, 2020 email targets Plaintiff's use of the Mark and thus establishes an actual controversy, are easily distinguishable from the instant matter. In *Classic Liquor Importers*, the defendant sent a letter asserting that the plaintiff's use of the mark at issue "will amount to unlawful infringement and dilution of" the defendant's mark. *Classic Liquor Imps., Ltd..*, 151 F. Supp. 3d at 457. The same letter threatened, "if [the plaintiff] does not cease and desist from using ROYAL ELITE, [the defendant] will 'vigorously protect[] its trademarks.'" *Id.* It was thus clear that the defendant addressed the plaintiff's use of its mark and threatened future litigation. By contrast, the July 15, 2020 email does not supply an ultimatum demanding Plaintiff cease use of the Mark; it simply states that Defendant's counsel "learned" Plaintiff was using ENTREPRENAWYER on social media. Decl., Ex. 4. Additionally, though Plaintiff's Opposition asserts that "Defendant has claimed infringement," Plaintiff provides no details as to where or when Defendant made such a claim. *See* Opp. at 12.

 In *Gelmart Industries*, the court found that plaintiff Gelmart plausibly alleged a case of actual controversy where the defendant, "[i]n essence, throughout its cease-and-desist letter and its USPTO filing, . . . accused Gelmart of infringing and diluting its mark." *Gelmart Indus.*, 120 F. Supp.3d at 332. There, the defendant's cease-and-desist letter not only expressed concern about consumer confusion, but asks that "Gelmart abandon its trademark application, agree to cease use of the Skintimates mark, and agree to refrain from future registration of such a mark."

8

*Id.* In addition, the defendant's opposition to Gelmart's application for registration, among other things: claimed that Gelmart's products are within the defendant's "zone of natural expansion"; contended that Gelmart will benefit from the defendant's goodwill; and asserted "[a]t least four times" that the registration of Gelmart's mark will damage the defendant. *Id.* The July 15, 2020 email requested only that Plaintiff call Defendant's counsel; importantly, it made no demand that Plaintiff cease use of ENTREPRENAWYER. *See* Decl., Ex. 4. The claims in neither the email nor Defendant's opposition to the Application rise to the level of the allegations in *Gelmart*, and Plaintiff does not otherwise allege facts to demonstrate that Defendant "in essence" accused Plaintiff of infringement. *See* Decl., Ex. 4; Decl., Ex. 9, Dkt. No. 17-11.

Finally, *Lee* is not a trademark case. It is further distinguishable as one of the letters sent to the *Lee* plaintiff "threaten[ed] him with an action for breach of contract, defamation, and copyright infringement," warned that "[t]his letter shall serve you as the only notice prior to litigation," and was accompanied by "a draft version of the complaint [the defendants] would file in a New York state court"; a second letter stated "all legal possible actions will be taken against you." *Lee*, 2013 WL 1234829, at *2, 4. To reiterate, the July 15, 2020 email does not articulate claims against Plaintiff, nor did it attach a draft of the Complaint. Though the email generally explains that Defendant "protect[s] its intellectual property rights, reputation, and goodwill," *see* Decl., Ex. 4, Defendant's tone, "while protective of what it perceives to be its legal interests, was certainly not threatening." *See 1-800-Flowers.com*, 905 F. Supp. 2d at 458 (quoting *World Religious Relief v. Gospel Music Channel*, 563 F. Supp. 2d 714, 716 (E.D. Mich. 2008)).

Plaintiff also contends Defendant "made additional threats in its subsequent correspondence." Opp. at 9. However, what Plaintiff portrays as additional threats largely focus on "Defendant's allegation of the similarity of the marks and likelihood of confusion" and

9

assume their threatening nature "in the context of the earlier July 15, 2020 communication directed to [Plaintiff's] **use** on LinkedIn." *Id.* (emphasis in Opp.).  As discussed, the July 15, 2020 email concerns Plaintiff's use of the Mark only to the limited extent that it mentions Defendant's counsel learned Defendant was using the Mark on social media.  Given that the email does not actually provide the context that Plaintiff suggests lends the subsequent communications their threatening disposition, the Court finds this argument unpersuasive.  Relatedly, the parties both characterize the subsequent correspondence as settlement discussions.  *See* Mot. at 6; Opp. at 17.  Even if the correspondence did touch on Plaintiff's use of the Mark, "the fact that settlement discussions have linked the issues of registration and use does not push this dispute into the territory of federal jurisdiction." *Vina Casa Tamaya*, 784 F. Supp. 2d at 396 ("parties should be encouraged to engage in interest-based negotiation without making a federal case of it").

Additionally, Plaintiff draws the Court's attention to Defendant's suit against Roach, a non-party to the instant action.  Opp. at 8.  Plaintiff reasons that, because Defendant sued Roach, who also seeks to cancel Defendant's trademark before the TTAB, it is likely that Defendant will bring suit against Plaintiff.  *See* Opp. at 3-4, 8.[2]  Plaintiff does not refer to Defendant's suit against Roach in its Complaint, nor does Plaintiff submit evidence detailing those proceedings.  Perhaps most significantly, Plaintiff does not cite authority in support of its argument that Defendant's suit against Roach establishes an actual controversy.  Case precedent in this Circuit,

---

[2] Roach sought to cancel marks belonging to Defendant in April 2020.  *See* Justman Reply Decl. ("Reply Decl."), Ex. 2, Dkt. No. 19-3.  Though Plaintiff and Roach sought to consolidate their cancellation proceedings against Plaintiff, the TTAB denied consolidation.  *See* Decl., Ex. 1; Reply Decl., Ex. 4, Dkt. No. 19-5.  The Court is not convinced that Plaintiff and Roach are "nearly identically situated," as Plaintiff suggests, simply because they attempted to consolidate their cancellation proceedings.  Opp. at 8.  Even if they were nearly identically situated, it is not clear to the Court that such a similarity, on its own, would demonstrate that a case of actual controversy exists here.

however, establishes that a party's suit against a non-party does not yield an actual controversy for purposes of the Declaratory Judgment Act. *See Avon Prods., Inc. v. Moraccanoil, Inc.*, No. 12 Civ. 4507(GBD), 2013 WL 795652, at *5 (S.D.N.Y. Mar. 4, 2013) ("Prior actions against other infringers do not give rise to an actual controversy with a non-party." (citing *Indigodental GMBH & Co. KG v. Ivoclar Vivadent, Inc.*, No. 08 Civ. 7657(RJS), 2008 WL 526294, at *3 (S.D.N.Y. Dec. 10, 2008))).

Plaintiff also posits that there exists a threat of future litigation and an actual controversy because Defendant "has not covenanted not to sue [Plaintiff]." Opp. at 10. Plaintiff, however, does not indicate that it ever sought such a covenant from Defendant. Moreover, even if Plaintiff had requested Defendant covenant not to sue Plaintiff, a "party's refusal to sign a covenant not to sue . . . is not considered an imminent threat of suit." *I.O.B. Realty*, 2020 WL 2086096, at *2 (citing *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 906 (Fed. Cir. 2014)).

Lastly, the Court notes Plaintiff asserts the July 15, 2020 email "established that the parties have 'adverse legal interests' over the use of the [M]ark sufficient to establish a case or controversy." Opp. at 9. Plaintiff does not expand on this argument. *Medimmune* instructs that a case of actual controversy exists where there is a showing of substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, between parties having adverse legal interest. *MedImmune*, 549 U.S. at 127. Even assuming the parties have adverse legal interests, this alone does not establish a case of actual controversy.

Based on the above, considering the totality of the circumstances, Plaintiff fails to show that there exists a case of actual controversy sufficient for this Court to exercise jurisdiction

11

pursuant to the Declaratory Judgment Act. Accordingly, the Court respectfully recommends that Defendant's Motion to Dismiss be GRANTED.[3]

## IV. CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Defendant's Motion be GRANTED.

## V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                        /s/
                              Steven L. Tiscione
                              United States Magistrate Judge
                              Eastern District of New York

Dated: Central Islip, New York
        June 21, 2021

---

[3] As this Court lacks subject matter jurisdiction, it will not consider Defendant's remaining arguments as to: whether this Court should in its discretion exercise jurisdiction; whether Plaintiff has stated a claim for cancellation; and whether portions of the Complaint should be stricken. *See Halo Lifestyle LLC v. Halo Farm, Inc.*, 18 Civ. 9459 (PAE), 2019 WL 1620744, at *5 (S.D.N.Y. Apr. 16, 2019) (finding "no occasion" to reach alternative arguments in motion to dismiss, where court found no case of actual controversy to furnish subject matter jurisdiction over plaintiff's action for declaratory judgment of noninfringement); *see also Nike*, 663 F.3d at 98-99 (affirming dismissal of cancellation claim where district court lacked subject matter jurisdiction, and noting that 15 U.S.C. § 1119 "creates a remedy for trademark infringement rather than an independent basis for federal jurisdiction").